# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STEPHEN WAYNE DARILEK,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 3:14-cv-00206 RRB<br><br>**<u>ORDER GRANTING<br>MOTION AT DOCKET 11</u>** |

## I. INTRODUCTION

Claimant, Stephen Darilek, filed an application for Disability Insurance Benefits and Supplemental Security Income which Defendant, the Commissioner of Social Security, denied. Darilek has exhausted his administrative remedies and seeks relief from this Court, arguing that the Commissioner's decision that he is not disabled within the meaning of the Social Security Act is not supported by substantial evidence. Darilek seeks a remand for benefits or, in the alternative, a remand for further consideration by the ALJ. Docket 1. Specifically, Claimant requests that the Court "remand the cause for rehearing so that the ALJ may (1) take testimony regarding the particulars of Darilek's performance of work under special conditions, and (2) consider whether Darilek should be awarded benefits from the alleged date of onset until the date when his work under special conditions led to earnings above the SGA threshold." Docket 11 at 24.

Darilek has filed an opening brief on the merits, construed by this Court as a motion for summary judgment. Defendant opposes, arguing the denial of benefits is supported by substantial evidence and free of legal error. Darilek has replied. Docket nos. 11, 15, and 16. For the reasons set forth below, Darilek's Motion for Summary Judgment at **Docket 11** is **GRANTED** and this matter is **REMANDED** for further consideration.

## II. STANDARD OF REVIEW

The findings of the Administrative Law Judge ("ALJ") or Commissioner of Social Security regarding any fact shall be conclusive if supported by substantial evidence.[1] A decision to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[2] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[4] In making its determination, the Court considers the evidence in its entirety, weighing both the evidence

---

[1] *See* 42 U.S.C. § 405(g)(2010).

[2] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)(citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[4] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

that supports and that which detracts from the Commissioner's conclusion.[5] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[6]

### III. DETERMINING DISABILITY

The Social Security Act (the "Act") provides for the payment of disability insurance benefits ("DIB") to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[7] In addition, supplemental security income benefits ("SSI") may be available to individuals who are age 65 or over, blind or disabled, but who do not have insured status under the Act.[8] Disability is defined in the Social Security Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[9]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists

---

[5] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[6] *Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).

[7] 42 U.S.C. § 423(a) (2011).

[8] 42 U.S.C. § 1381 (2011).

[9] 42 U.S.C. § 423(d)(1)(A) (2011).

in significant numbers either in the region where such individual lives or in several regions of the country.[10]

The Commissioner has established a five-step process for determining disability. Claimant bears the burden of proof at steps one through four.[11] The burden shifts to the Commissioner at step five.[12] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity. **The ALJ concluded that the Claimant has not engaged in substantial gainful activity since January of 2011, but that he applied for and collected unemployment benefits throughout 2011. Tr. 22.**

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement. **The ALJ found Claimant has the following severe impairments: degenerative disc disease of the lumbar spine; coccydynia; status post left hip arthroscopy with femoral head-neck osteochondroplasty. Tr. 22.**

**Step 3.** Determine whether the impairment is the equivalent of a number of listed impairments listed in 20 C.F.R. pt. 404, subpt. P, App. 1, that are so severe as to preclude substantial gainful activity. If the impairment is the equivalent of one of the listed impairments and meets the

---

[10] 42 U.S.C. § 423(d)(2)(A) (2011).

[11] *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[12] *Id.*

duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step. **The ALJ concluded Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 25. The ALJ specifically addressed listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine) and concluded the medical evidence did not satisfy either listing. Tr. 26.**

      **Residual Functional Capacity**. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. This RFC assessment is used at both step four and step five.[13] **In evaluating his RFC, the ALJ concluded that Claimant has the RFC to perform light work except that he is limited to work activities that involve only occasional stooping or climbing of ladders, ropes, scaffolds, ramps or stairs; can frequently crouch; must avoid concentrated exposure to extreme cold, excessive vibration, and unprotected heights; and is limited to occupations that provide a sit/stand option that would allow him to alternate between positions at 15 to 30 minute intervals throughout the day to relieve pain and discomfort. Tr. 27.**

      **Step 4.** Determine whether the impairment prevents the claimant from performing work performed in the past. At this point the analysis considers the claimant's residual functional capacity and past relevant work. If the claimant can still do his or her past relevant work, the claimant is deemed not to be disabled. Otherwise, the evaluation process moves to the fifth and final step. **The ALJ found that Claimant could not perform his past relevant work as a journeyman carpenter and lead worker, as that work was medium to heavy exertional range. Tr. 32.**

---

[13] 20 C.F.R. §§ 404.1520(a)(4)(2011); §416.920(a)(4) (2011).

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his or her age, education, and work experience, and in light of the residual functional capacity. If so, the claimant is not disabled. If not, the claimant is considered disabled. **The ALJ concluded that Plaintiff was not disabled, as he could perform jobs that exist in significant numbers in the national economy, including Mail Clerk, Routine Office Helper, and Cashier. Tr. 32-33.**

Claimant bears the burden of proof at steps one through four.[14] The burden shifts to the Commissioner at step five.[15] The Commissioner can meet this burden "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[16] The Medical-Vocational Guidelines are commonly referred to as "the grids." The Ninth Circuit has explained that significant non-exertional impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids inappropriate.[17] Pain can be a non-exertional limitation. Where the grids do not accurately reflect the claimant's limitations, the testimony of a vocational expert is necessary.

---

[14] *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[15] *Id.*

[16] *Id.* at 1099.

[17] *Tackett*, 180 F.3d at 1101-02.

# IV. DISCUSSION

## A.   Issues on Appeal

The Court finds no error in the ALJ's analysis and findings under Steps 1 or 2, and Claimant does not contest the ALJ findings under these steps. At Step 3, where the ALJ concluded that he did not have an impairment that met or equaled a listed impairment, Claimant alleges that he meets Listing 1.04. Additionally, Claimant alleges several specific errors by the ALJ.

### 1. Consideration of mental condition

Claimant does not allege impairment due to a mental condition, yet the ALJ analyzed Claimant's mental status and determined that it was "non-severe." Claimant complains that such analysis was in error, as Claimant never put his mental status into question. Claimant alternatively argues that if "the ALJ was correct in choosing to evaluate Claimant's mental conditions of anxiety and depression related to situational stress, then he had a duty to consider the combined effects of Claimant's mental impairments along with his physical impairments." Docket 16 at 2. While the Court agrees that the ALJ did not need to analyze Claimant's mental status where Claimant has not claimed any mental impairment related to his disability, such error, if any, was harmless. It is unclear how Claimant was "prejudiced" by the ALJ's analysis. There is no indication that Claimant's mental state had any bearing on the ALJ's decision one way or the other. The ALJ merely evaluated it and deemed it non-severe. Claimant is correct that any non-severe condition should be evaluated in conjunction with his severe conditions to make a determination of disability. The ALJ should articulate upon remand the relevance of any mental state.

## 2. Combination of Impairments and Listing 1.04 - Disorders of the Spine

Claimant argues that the ALJ erred when he failed to determine whether the combination of Darilek's physical impairments equaled those of a listed impairment, pursuant to 20 C.F.R. § 416.926 (b)(3). Listing 1.04 reads as follows:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> OR
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Claimant argues that the ALJ erred when he recited Listing 1.04, leaving out the prefix *e.g.,* thereby limiting the conditions covered by the listing to the examples given. Claimant further alleges that although the ALJ stated "the undersigned finds that there is no evidence demonstrating any of the criteria set forth in paragraphs A, B, or C," Claimant's "most debilitating impairments are

coccydynia, or tailbone pain, and ischial tuberosity bursitis, which affects his left hip. AR 413."
Docket 11 at 11. Claimant's brief suggests he meets the listing of 1.04 citing to various medical records, but does not articulate clearly *which section* of 1.04 he alleges is applicable or *how the cited medical records* support his position. *See* Docket 11 at 11-14. The Court cannot discern Claimant's argument in this regard, noting that the only reference cited that suggests falling under A, B, or C of 1.04 is a May 5, 2008, reference to "neural foraminal stenoses," which this Court cannot necessarily equate with "lumbar spinal stenosis" in section C. Nor can the Court conclude that consideration of a "combination of impairments," as suggested by Claimant's briefing, would yield a finding under 1.04. The medical records, while replete with findings that Claimant has significant back pain due to his 2007 injury, do not contain findings adequate to satisfy Listing 1.04 without the assistance of a medical professional to testify and define portions of the medical records.

### 3. Pain And Credibility

Claimant argues that the ALJ erred when he failed to evaluate Claimant's pain pursuant to 20 C.F.R. § 926(d), and that the ALJ's method of evaluating Claimant's pain was inappropriate and an abuse of discretion. He argues that to reach the determination that he exaggerated his pain, the ALJ cherry-picked from the record.

The Court notes that the ALJ found that based on the medical evidence and Claimant's self-reported activities, Claimant is "not as limited as he alleges in this appeal." Tr. 28. Specifically, the ALJ noted that Claimant had significant improvement following his hip surgery in 2008, and in 2009 Claimant reported to Dr. Prevost that he was "able to be functional at that time." Tr. 28. The ALJ acknowledges Claimant's chronic pain, but suggests that the medical evidence reflects that use of

narcotics and other pain medication effectively manages his symptoms. Tr. 28. The ALJ further opined that the medical records do not support Claimant's testimony that his medications cause adverse side effects that include drowsiness and impaired cognitive functioning. Tr. 29. The ALJ further took issue with Claimant's willingness to endure flights to Texas in 2010 and 2012, despite the fact that sitting for more than 15 minutes causes "unbearable" pain. Tr. 29. Finally, the ALJ noted that although Claimant alleged that he was no longer able to hunt due to pain, the record indicates that Claimant went bear hunting in the Fall of 2010, on a 10 day moose hunt in the Fall of 2011, and on an 8 day bear hunt in August 2010. The ALJ found that this "suggests that he is capable of performing light exertional work activities with the additional limitations detailed in the [RFC]." Tr. 29. The ALJ acknowledged that the bear camp was "handicapped accessible," but notes that hunting more likely than not involves "standing on uneven ground," which is something Claimant testified exacerbates his symptoms. Tr. 29. Claimant's use of a cane at the ALJ hearing raised questions in the ALJ's mind, as none of the medical records reflect Claimant's use of a cane. Tr. 30.

The Court understands the ALJ's skepticism. However, the medical records consistently reflect pain between 5 and 7 on a scale of 1-10 from 2007-2012. Multiple physicians treated the Claimant and none suggested that his pain was exaggerated or that he was malingering. In reaching his conclusion regarding credibility, the ALJ made a number of assumptions, ignored numerous record entries, and failed to acknowledge the specific circumstances under which Claimant traveled to Texas and went hunting. In fact, the ALJ did not ask any questions about how Claimant tolerated

ORDER GRANTING DOCKET 11 - 10
3:14-CV-00206-RRB

a long flight.[18] Nor did the ALJ acknowledge – beyond noting its handicap accessibility – that the "hunting camp" Claimant now uses is a camp specifically designed for disabled Veterans, which baits the prey and has ramps and other services.

The Government suggests that the ALJ had no obligation to give Claimant an opportunity to explain the contradictions. Docket 15 at 14. While it may be true that the ALJ need not question a claimant regarding inconsistent statements,[19] the ALJ here was not relying upon inconsistent statements but upon *assumptions* the ALJ made. Claimant testified that he is no longer able to hunt in the manner he formerly employed, but that his hunting was due to "exceptional circumstances" involving his connection with the Wounded Warrior Project which is designed specifically for the disabled to experience hunting. Tr. 52-53. The ALJ then made a number of assumptions about Claimant's hunting, including walking on uneven ground and carrying a heavy rifle. Similarly, although Claimant testified that he used to fly out of state two or three times a year, now he travels "only when he really [has] to," about once a year. Tr. 54. The ALJ, however, assumed that any travel meant that Claimant's pain was not as bad as he alleged. The ALJ's assumptions warranted further questioning.

Overall the Court notes that Claimant's pain has never improved for an extended period of time, and that although long-term pain management has been discussed, it had not been accomplished at least through May 2012. Tr. 327, 323, 317, 318, 330, 399. The status of Claimant's

---

[18] The ALJ stated that he "notes that the flight time to Texas is significantly longer than 15 minutes." This Court takes judicial notice that anyone who lives in Alaska must tolerate long flights, or be trapped in the State.

[19] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

ongoing pain is undisputed in the record. The ALJ's focus on Claimant's use of a cane that was never prescribed, and handicap-accessible hunting trips (without more information), was inadequate to support the adverse credibility finding. Moreover, this Court agrees with the Claimant that the ALJ's failure to consider Claimant's *daily activities*, as opposed to isolated *annual activities*, was error. Daily activities are particularly relevant in cases where pain is the primary debilitating factor. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

### 4. Vocational Expert Testimony

Claimant argues the ALJ erred when he submitted a hypothetical question to the vocational expert that was not consistent with any of the physical residual capacity assessments in the record. Docket 11. Claimant further complains that the jobs identified by the vocational expert and accepted by the ALJ do not allow for a sit/stand option according to the Dictionary of Occupational Titles. Docket 16. Because the Claimant does not adequately explain or support these arguments, the Court does not address them.

### V. CONCLUSION

A decision of the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Court has carefully reviewed the administrative record, including extensive medical records, as well as the briefing.

The ALJ states that Claimant applied for and collected unemployment benefits through 2011. Tr. 22. Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it

shows that an applicant holds himself out as capable of working. *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014). However, the Court can find no evidence of the receipt of unemployment benefits in the exhibits cited by the ALJ or anywhere in the record. Indeed, a decision denying disability benefits to a claimant would be reasonable *through the date the claimant last sought unemployment benefits.* Whether or not this Claimant sought unemployment benefits and when they were received should be clarified upon remand. Moreover, the briefing reveals that:

> In January of 2013, two years after the alleged onset date, Stephen Darilek went back to work as a sales clerk in a gun store in his hometown of Wasilla. The job was offered to him as a favor by a member of his church. He was given accom[m]odations for his disability, namely a 4-day per week schedule, 8 hours a day, provided that if the pain were too intense, he could call in and take the day off. Special mats were laid down behind the counter for his comfort in standing or walking, and 2 chairs were placed at the ends of the counter, with a sit/stand option. Darilek adjusted his medications to handle the job. . . . Darilek has had to use all of the accom[m]odations provided for him. He is continuing to work as a sales clerk at this time, paid just enough to put him over the SGA threshold for some months.

Docket 11 at 7.

The Court concludes, based upon the record as a whole, that the ALJ's determination was not supported by substantial evidence. The record reflects a significant injury, a workers' compensation compromise and release, a failed work attempt, and undisputed ongoing potentially debilitating pain since the 2007 accident. Even today with accommodations, Claimant does not work a 40 hour work week. The ALJ's primary reason for denying benefits was based on adverse credibility findings, which the Court notes were improperly based upon assumptions made by the ALJ. However, the Court also notes that it is possible that due to Claimant's current working status

and intermittent substantial gainful activity, which this Court does not evaluate, Claimant may only be eligible for a closed period of disability.

Upon remand the ALJ shall:

1. Clarify whether and when Claimant collected unemployment benefits;

2. Consider Claimant's current working conditions, take testimony regarding his ability to work under accommodations, and consult with the vocational expert whether such accommodations render an individual capable of working in the national economy such as to preclude a finding of disability; and

3. Base any credibility finding upon actual testimony and records, rather than assumptions.

## VI. ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that the Claimant's Motion for Summary Judgment at **Docket 11** is **GRANTED** and this matter is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED** this 16th day of September, 2015.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DOCKET 11 - 14
3:14-CV-00206-RRB